# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3947 | **DATE** | 8/26/2003 |
| **CASE TITLE** | Infosys Inc. vs. Billingnetwork.com, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss (4-1) is granted. InfoSys's motion for leave to file a sur-reply (10-1) is granted. The status hearing set for 9/4/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 28 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 12 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 AUG 28 AM 8:32 | 8/27/2003 date mailed notice | |
| GL | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INFOSYS INC., an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>BILLINGNETWORK.COM, INC., a Florida corporation,<br><br>Defendant. | No. 03 C 3947<br>Judge James B. Zagel<br><br>DOCKETED<br>AUG 2 8 2003 |

## MEMORANDUM OPINION AND ORDER

Defendant Billingnetwork.com, Inc. ("BNC") is a Florida-based company that offers an Internet-based billing system to doctors, medical practices, hospitals, and other companies that provide medical billing services. On October 20, 1999, BNC filed a patent application in the name of two BNC employees for its Internet-based medical billing system known as "DirectAccess." On April 16, 2002, U.S. Patent No. 6,374,229 ("the '229 patent") was issued on this application. While this application was pending, many Internet-based medical billing systems were developed by other companies, including plaintiff InfoSys, Inc.

On or about October 29, 2002, BNC learned that InfoSys was selling its own Internet-based medical billing system. On March 16, 2003, BNC sent InfoSys an offer to enter into a license agreement under the '229 patent. After receiving a telephone message from an InfoSys employee, BNC instructed its attorneys to send InfoSys a follow-up letter on April 28, 2003. Further correspondence between the parties then ensued followed by InfoSys filing a Complaint for a declaratory judgment of the '229 patent against BNC on June 10, 2003. BNC now moves

to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3).[1]

Personal Jurisdiction

In order to defeat BNC's motion to dismiss for lack of personal jurisdiction, InfoSys need only establish a prima facie case of personal jurisdiction over BNC. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D. Ill. 2000). In patent infringement cases, Federal Circuit law controls, even in determining the question of whether to exercise personal jurisdiction over out-of-state defendants. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). The Court also applies Federal Circuit law in personal jurisdiction inquiries over out-of-state patentees in declaratory judgment actions. *Id.*

The analysis for determining whether personal jurisdiction exists is a two-step inquiry. *Id.* First, the defendant must be amenable to service of process under the appropriate state long-arm statute. *Id.* Second, I must determine that the defendant's activities within the forum state satisfy the minimum contacts requirement of the due process clause. *Hildebrand*, 279 F.3d at 1354. In this case, the Illinois long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent authorized under the United States Constitution and the Illinois Constitution. *Facilitec Corp. v. Grease Stopper, Inc.*, No. 01 C 2971, 2002 WL 226758, at *2 n. 1 (N.D. Ill. Feb. 13, 2002). Because of this, "the statutory analysis collapses into a due process inquiry, and

---

[1] InfoSys's Motion for Leave to File a Sur-Reply is granted, but the Sur-Reply does not affect my decision regarding personal and subject matter jurisdiction.

2

[I] need not consider whether defendants engaged in any of the acts enumerated in the long-arm statute." *LFG, LLC v. Zapata Corp.*, 78 F.Supp.2d 731, 735 (N.D. Ill.1999).

For an exercise of personal jurisdiction to satisfy due process, the defendant must have minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This determination depends on whether the plaintiff asserts general or specific jurisdiction against the defendant. "General jurisdiction . . . is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business' contact with the forum." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). Specific jurisdiction, on the other hand, refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

In the instant case, the Complaint contains no direct allegation that the Court may exercise personal jurisdiction, either general or specific, over BNC as a non-resident defendant. Plaintiff merely refers to venue, stating that "[v]enue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)." BNC maintains that this Court has neither general nor specific jurisdiction over it. In response, InfoSys argues that BNC has subjected itself to personal jurisdiction of this Court – either general or specific – by virtue of its purposeful and continuous sales efforts in Illinois through its interactive website and national marketing campaigns directed at the healthcare industry.

General Jurisdiction

A website can be a purposeful contact with the forum state for purposes of general jurisdiction. *Euromarket Designs, Inc.*, 96 F.Supp.2d at 837. An exercise of personal jurisdiction is proper where a defendant clearly does business with residents of the forum state over the Internet, *i.e.*, the website is "interactive." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).

> In weighing the issue of personal jurisdiction in the context of the Internet, courts typically use a sliding scale analysis to ascertain what level of Internet interaction subjects a defendant to personal jurisdiction. . . . The analysis consists of three levels: (1) where the defendant conducts business over the Internet through its active website; (2) where the defendant maintains an interactive website; and (3) where the defendant maintains a passive website.
> . . .
> The first category [level 1] consists of situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction . . . over the Internet, personal jurisdiction is proper. . . . Websites in this category are interactive and allow for [a] transaction between the user and the website owner.
> . . .
> The second category [level 2] is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.
> . . .
> The final category [level 3] consists of situations where a defendant has simply posted information on an Internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.

This Court has addressed this issue in *Aero Products Int'l, Inc. v. Intex Corp.*, No. 02 C 2590, 2002 WL 31109386, at *5 (N.D. Ill. Sept. 20, 2002) (internal quotation marks and citations omitted).

4

Here, InfoSys argues that BNC's website is sufficiently interactive to confer either general or specific jurisdiction. Although the website is clearly not a level 1 website because it does not include an area where potential customers can enter into a contract with BNC over the Internet, it does have a high "level of interactivity" that is of a high "commercial nature." *Aero Prods. Int'l, Inc.*, 2002 WL 31109386, at *5. First, the company's name of "Billingnetwork.com, Inc." indicates that the website plays an integral role in the business and thus has a highly commercial nature. In addition, the website states that personal information from potential clients for BNC's Internet billing system known as "DirectAccess" can be collected from "registration forms, product order information, and other web forms." Furthermore, although "DirectAccess" clients cannot enter into a contract exclusively through the website, the website does profess that one can become a client online and that "all enrollment and training can be accomplished online." Even if this is not the case, however, the process for becoming a "DirectAccess" client can at least be initiated through an exchange of information via the website, and, once under contract, clients may use the website as the primary means for implementing the product and training new users.

In addition to marketing "DirectAccess" for purchase online and initiating client relationships, the website solicits non-customers to become "partners" with BNC. The website describes these partnerships as "strategic relationships with other billing centers and companies who operate in the healthcare industry," and the intent for forming them is "to create new opportunities and new customers for BillingNetwork and our partners." Accordingly, these partnerships have a strong commercial nature. Anyone interested in becoming a BNC "partner"

may enroll with BNC directly from the Partners page of the website, and thus there is interconnectivity of a commercial nature.

The website also solicits software resellers, medical sales representatives, and practice management consultants to join its "network of qualified Value Added Resellers (VARS)." Anyone interested in doing so is invited to fill out an online form to join. Therefore, we have more interconnectivity of a commercial nature. Finally, there are other interconnectivity features but of a lesser commercial nature; the website offers an opportunity to subscribe to its periodic newsletter, and, on a separate page for investors, the website invites potential investors to fill out a form for more information "about investment opportunities" in the company.

In the end, whether the BNC website is sufficiently interactive to confer general jurisdiction by itself is, to say the least, a close call. On the one hand is a line of cases in which courts found that comparable sites did not confer jurisdiction.[2] On the other hand is an equally strong line of cases in which courts found that comparable sites did confer jurisdiction.[3] In the

---

[2] *See Haemoscope Corp. v. Pentapharm AG*, No. 02 C 4261, 2002 WL 31749195 (N.D. Ill. Dec. 9, 2002) (finding no jurisdiction on the basis of a website that allowed users to request additional product information from the site, but then informed the user that the allegedly infringing device was not yet available in Illinois); *Haggerty Enters., Inc. v. Lipan Indus. Co., Ltd.*, No. 00 C 766, 2001 WL 968592, at *6 (N.D. Ill. Aug. 23, 2001) (finding no jurisdiction on the basis of a website that listed no prices and did not offer direct sales, but did allow the user to contact the defendant through its website to obtain further information); *LaSalle Nat'l Bank v. Vitro, Sociedad Anonima de Capital Variable*, 85 F.Supp.2d 857, 862 (N.D. Ill. 2000) (finding no jurisdiction on the basis of a website that did not allow for direct sales, but did offer users access to on-line catalogs and gave them the ability to interact directly with defendant's customer service representatives).

[3] *See Publications Int'l, Ltd. v. Burke/Triolo, Inc.*, 121 F.Supp.2d 1178, 1183 (N.D. Ill. 2000) (finding jurisdiction on the basis of a hybrid website which it found to be highly commercially interactive because, after requesting a catalog through the website, users received defendant's catalog and could place orders); *LFG, LLC v. Zapata Corp.*, 78 F.Supp.2d 731 (N.D. Ill. 1999) (finding jurisdiction on the basis of an Internet website portal, directing users to other

final analysis, BNC makes the determinative point when it cites to *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, at *6 (N.D. Ill. Mar. 19, 2002) for the observation that cases conferring jurisdiction partly on the basis of Internet activity "reflect that personal jurisdiction is typically determined based not only on the defendant's Internet activities but also on its non-Internet activities."[4] In contrast to these situations, the *Watchworks* Court found no jurisdiction because the plaintiff provided evidence only of an employee and its investigator accessing the website and no evidence of other Illinois residents accessing the website or requesting that it be placed on defendant's mailing list. 2002 WL 424631, at *6 note 8. In sum, there is no case where general jurisdiction was conferred on the basis of an interactive website in the absence of non-website factors evidencing intent for a defendant's product or website to reach a particular state.

Here, assuming *arguendo* that InfoSys can establish the minimal level of interactivity of the BNC website that is sufficient to establish that the website is a hybrid (level 2) website, general jurisdiction does not exist because of the absence of any non-website activities by BNC. InfoSys claims that BNC marketed its website in Illinois and nationwide through its

---

websites through interactive dialogue and through which Illinois users were invited to place themselves on defendant's mailing list); *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D. Mo.1996) (finding jurisdiction on the basis of a website providing information about a forthcoming electronic mailing list service that would forward to users advertisements that matched their selected interests).

[4] *See Publications Int'l, Ltd.*, 121 F.Supp.2d at 1182-83 (finding that the defendant had extensively distributed the allegedly infringing materials in Illinois); *LFG, LLC*, 78 F.Supp.2d at 736-37 (not only emphasizing that the defendant's website was actually an Internet portal but also that 25 Illinois residents requested to be placed on the defendant's mailing list); *Maritz, Inc.*, 947 F.Supp. 1328 (finding the defendant's website had been accessed at least 311 times in Missouri, the state in which personal jurisdiction was at issue).

advertisements and listings on several Internet directories that position the website as a source for medical billing solutions, but these Internet advertisements and accompanying Internet-based publicity are insufficient in connection with the hybrid website to establish personal jurisdiction. Generally, national advertisements (including those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois. *Aero Products Int'l, Inc.*, 2002 WL 31109386, at *7. There must be evidence that the defendant intended its advertisements to reach a particular state. *Id.* Here, InfoSys has cited no evidence indicating that BNC has specifically directed its Internet based advertisements into Illinois or targeted its website at Illinois residents, just as there was no such evidence in *Aero Products Int'l, Inc.* In addition, InfoSys has not offered evidence that BNC had Illinois clients, potential Illinois clients such as in *LFG, LLC*, or even any Illinois visitors to the website as in *Maritz*. All InfoSys has is BNC's alleged national advertising, but "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at *6 (quoting *Asahi-Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). Accordingly, because of the absence of any non-website factors in conjunction with the arguably hybrid website, general jurisdiction is not appropriate in this case.

Specific Jurisdiction

As mentioned above, specific jurisdiction is appropriate when the plaintiff's claim is related to or arises out of defendant's contacts within the state. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n. 8. For specific jurisdiction, the Federal Circuit has established a three-prong test that must be satisfied: (1) whether the defendant purposefully

directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999). InfoSys asserts specific jurisdiction based on the website, but, once again, there are no allegations, as *Aero Prods. Int'l, Inc.*, that BNC's website was specifically targeted at Illinois residents or that Illinois residents had initiated any actual or potential business relationships with BNC due to visiting the website. 2002 WL 31109386, at *6-7. Accordingly, InfoSys cannot satisfy the first prong of the *HollyAnne* test and therefore specific jurisdiction is also not appropriate in this case.

Subject Matter Jurisdiction

Along with the lack of personal jurisdiction, BNC argues that this Court cannot exercise subject matter jurisdiction over this dispute because there is no "actual controversy" as required under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991). To establish an "actual controversy" in a patent invalidity declaratory action, (1) there must be an explicit threat or action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) plaintiff must actually have either produced the device or have prepared to produce the device. *Arrowhead Indus. Water, Inc. v. Ecolochem*, 846 F.2d 731, 736 (Fed. Cir. 1988); *see also, Spectronics Corp.*, 940 F.2d at 632. The test for whether a defendant's conduct creates a reasonable apprehension is a "totality of the circumstances" test. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992).

9

Here, the totality of the circumstances does not indicate that BNC's actions constituted a threat of litigation which created a reasonable apprehension of an infringement suit. At the onset, the test for reasonable apprehension is an objective test. *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985). The test therefore requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension. *Phillips Plastic Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995). A purely subjective apprehension is insufficient to satisfy the actual controversy requirement. *Indium Corp. of America*, 781 F.2d at 883. Therefore, the subjective beliefs of InfoSys employees and clients as to whether litigation would be initiated – and even to what extent they believed this – is entirely irrelevant.

Regarding BNC's objective conduct, it is black letter law that merely offering a license does not create a reasonable apprehension. *Phillips Plastic Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995). Threats of litigation within the context of license negotiations also do not create a reasonable apprehension. *Shell*, 970 F.2d at 887. In *Shell*, the following circumstances occurred:

> [b]efore the meeting ended, offers were again made and rejected. Shell indicated that the parties were at an impasse and that litigation appeared likely. Oliver questioned whether Shell could file a declaratory judgment action since Shell was not manufacturing its catalyst. Vance responded that Shell was manufacturing the catalyst and asked, "I assume you will enforce your patent?" A representative of Amoco replied, "Yes," and the meeting ended.

*Id. Shell* held that the patentee's statements that the alleged infringer's activities "fall within," are "covered by," and are "operations under" the patent did not create a reasonable apprehension. *Id.* at 889.

Here, InfoSys's main support for the purported threats of litigation are a couple of letters and some follow-up phone calls. However, the letters include no explicit or implicit threat of litigation and clearly state that there are merely offers to take a license. For example, the March 16, 2003 letter also includes the following language:

> We are not charging you with infringement of the patent, but are bringing the patent to your attention so that you may consider licensing the patent to avoid a potential conflict with the patent. We are offering to license the patent on a non-exclusive basis for a modest royalty.

In addition, the follow-up phone calls in reference to the letters do not create a reasonable apprehension because they were made within the context of license negotiations. *Shell*, 970 F.2d at 887. Accordingly, InfoSys's assertion that BNC has made threats against it is without support in fact or law. BNC has not engaged in any extraordinary or threatening conduct by merely sending letters and/or making telephone calls to InfoSys or its customers in which it used language that was either identical or very similar to the language used in *Shell*. Therefore, subject matter jurisdiction does not exist.[5]

For the reasons above, BNC's Motion to Dismiss and InfoSys's Motion for Leave to File a Sur-Reply are GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 26 August 2003

---

[5] Having found that there is no basis for either personal jurisdiction or subject matter jurisdiction, it is unnecessary to consider whether venue is proper.

11